IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

| | |
|---|---|
| IN RE: RANDALL EDWIN JOHNSON<br>    and MICHELLE R. JOHNSON, Debtors | 4:05-bk-17184E<br>CHAPTER 7 |
| M. RANDY RICE, Trustee | PLAINTIFF |
| v.   AP NO. 4:06-ap-1331 | |
| RANDALL EDWIN JOHNSON and<br>MICHELLE R. JOHNSON | DEFENDANT |

**AMENDED MEMORANDUM OPINION**

**This Order was originally entered on July 18, 2007, and is hereby amended only to correct a typographical error in footnote 1.**

On March 22, 2007, a trial was held in the above-captioned adversary proceeding. David A. Grace appeared on behalf of the Defendants/Debtors ("**Debtors**"). Stephen B. Niswanger appeared on behalf of the Trustee, M. Randy Rice (the "**Trustee**"). Also before the Court were the following matters filed in the Debtors' case-in-chief: an *Amended Motion to Compel Debtors to Turnover Records and Property* filed by the Trustee (the "**Amended Motion to Compel**") (docket #179); a *Motion to Compel Debtors to Turnover Records* filed by the Trustee ("**Motion to Compel**") (docket #164)*;* and a *Response to Amended Motion to Compel Debtors to Turnover Records and Property* (docket #182) filed by the Debtors. The Debtors had also filed a *Motion in Limine and Objection to Trustee's Proposed Exhibit #6* (AP docket #9), but the Trustee did not seek to enter such exhibit into evidence, and

accordingly, the motion is moot. The Trustee's Amended Motion to Compel sought turnover of certain tax refunds; however, two days before trial, the Debtors turned over these tax refunds asserting that they had "settled" the issue. The Trustee maintains the issue was not settled although the refunds were tendered to him; accordingly, the Trustee seeks an award of attorneys fees for having to bring the Amended Motion to Compel with respect to the tax refunds. The Court ruled that the issue of attorney fees would be reserved for a later hearing.

The remaining issue before the Court is whether certain private school tuition payments made prior to the Debtors' bankruptcy constitute property of the Debtors' estate and whether the Trustee waited too long to file his complaint with respect to those tuition payments. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E), and the Court has jurisdiction to enter a final judgment in this case. The following constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## FACTS

At trial, the parties stipulated to the following facts:

(1) Debtors made a payment of $2,500 to Catholic High School on April 11, 2005, representing Mitchell Johnson's 9th grade tuition for the 2005-06 school year.[1]

(2) Debtors made a payment of $4,318 to Christ the King School on April 12, 2005, representing Michael and Megan Johnson's tuition for the 2005-06 school year.

---

[1] Catholic High's bookkeeper testified she received $250 on March 15, 2005, and $2,250 on April 8, 2005.

  (3)  Debtors filed a bankruptcy petition under Chapter 7 on June 3, 2005.

  (4)  Debtors filed their schedules and statement of affairs on July 15, 2005.[2]

  (5)  The Debtors' first meeting of creditors ("**341(a) Meeting**") was held August 4, 2005.

  (6)  A second 341(a) Meeting was held September 1, 2005.

  (7)  A third 341(a) Meeting was held January 19, 2006.

  (8)  The Trustee filed the Motion to Compel and Complaint on October 16, 2006.

  (9)  The Debtors tendered the tax refunds sought by the Trustee on March 20, 2007.

Trial in this matter was held March 22, 2007. In addition to the stipulated facts listed above, it was further elicited at trial that the payments to Catholic High and Christ the King were only listed on the Debtor's Statement of Financial Affairs under:

  **3.**  **Payments to creditors**.

    a. List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor made within **90 days** immediately preceding the commencement of this case.

---

[2] A review of the court's docket indicates that Debtors requested and received two extensions of time to file such schedules and statement of affairs. The Court takes judicial notice of all documents filed in the current case. *See* Fed. R. Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr. N.D. Ala. 1996) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.") (citations omitted); *see also In re Penny*, 243 B.R. 720, 723 n.2 (Bankr. W.D. Ark. 2000).

The payment to Christ the King was listed at $5,918.[3] No indication was made that the payments were for the following year's school tuition rather than a debt. It was also stipulated that the tuition payments were never claimed as exempt, and were not included or intended to be included in the Debtors' repurchase of non-exempt assets.[4]

Barbara Pierce, the bookkeeper at Catholic High School, testified that before students are registered in early August, parents may seek a full refund of tuition already paid. Pierce testified that after registration, the school will usually work with parents to give them a refund of the tuition while allowing the child to remain enrolled if the parents agree to a monthly automatic draft for the tuition. Pierce explained that whether such an arrangement can be made is within the principal's discretion.

Jackie Kaufman, finance officer for Christ the King Church, testified that prior to August 1 of each year, parents can withdraw their children and receive a full refund for tuition already paid. She also testified that when parents do not wish to withdraw their children, but seek a refund of prepaid tuition, the school, in its discretion, may issue them a refund on the condition they consent to a monthly automatic draft from their bank account.

---

[3] Debtor Randall Johnson testified that this number probably included some Mother's Day Out payments for their youngest child in addition to the tuition payments.

[4] The Trustee and Debtors had negotiated the Debtors' purchase of certain non-exempt assets from the estate which resulted in an order approving such purchase entered April 19, 2006. Based on the Trustee's testimony, the Court understands this stipulation to mean that the Debtors never intended to include this asset in the assets they were purchasing; the Trustee testified that he initially believed the Debtors would purchase this asset, although the Trustee did not testify as to what point in the negotiation process it became clear to him that the Debtors would not purchase this asset. To the extent the stipulation conflicts with the Trustee's testimony, the Court relies on the evidence rather than the stipulation.

Debtor Randall Johnson testified that in prior years, he had paid tuition in a variety of ways, sometimes paying the entire year in advance, sometimes paying bi-annually, and sometimes paying monthly. Mr. Johnson was aware that he had the option to pay monthly, but also knew he could receive a discount for paying in advance.

At the August 4, 2005 341(a) Meeting, Mr. Johnson told the Trustee that the prepaid tuition payments were for the 2005-2006 school year. The Trustee testified that although he had the information regarding the prepaid tuition payments at the August 4, 2005 341(a) Meeting, there were so many other issues in the case that he did not fully comprehend that the prepaid tuition payments were property of the estate until the third and last meeting of creditors on January 19, 2006. To demonstrate the volume of issues with which he was dealing, the Trustee testified that the August 4, 2005 transcript was 97 pages long, the September 1, 2005 transcript was 74 pages long, and the January 19, 2006 transcript was 156 pages long. In addition to the complexity of the case, the Trustee attributed his delay in filing the Complaint and Motion to Amend, in part, to his belief that the debtors would want to negotiate a purchase of the tuition payments along with other non-exempt assets. The Trustee testified that he did not pick up any of the Debtors' non-exempt assets because at a 341(a) Meeting, Debtors' counsel had said, "'Well, it's our intention to try to negotiate with the Trustee to acquire nonexempt property.'" (Transcript, p. 86). The Trustee testified, "[s]o my thought also was that this potential asset – and keep in mind I wasn't certain what it was at that point anyway – but, you know, these debtors have children in school, and you know, based on [Debtors' counsel's] statement there I assumed that they would want to negotiate

5

that asset as well." (Transcript p. 87). The Trustee did not contact either Catholic High or Christ the King about the tuition because he felt they would not turn over the funds without permission of the Debtors or a Court order, but made a demand on the Debtors for the funds in August 2006. The Trustee filed the complaint and Motion to Compel on October 16, 2006.

## ANALYSIS

The Trustee asserts that the Debtors' right to a refund of certain tuition payments made prior to their bankruptcy filing constitute property of the estate, and because the Debtors did not request a refund and the tuition payments were thereafter earned, the Debtors should be required to reimburse the estate for those payments. The Debtors contend that the tuition payments were not property of their bankruptcy estate because they did not have control over such payments at the time they filed bankruptcy. The Debtors further assert that the Trustee has waited too long to demand reimbursement for the tuition payments.

### *A.  Tuition Payments as Property of The Estate*

Property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). State law determines the nature and extent of a debtor's interest in property. *See Butner v. United States*, 440 U.S. 48, 55 (1979). In this case, the question is whether payments made by the Debtors for private school tuition for the following school year[5] were property of the Debtors' bankruptcy estate.

---

[5] While Debtors argue that these payments were not "prepaid" because they were in fact due, school officials testified that parents are not required to prepay an entire school year's

6

Counsel for both parties and this Court found no case directly on point with respect to prepaid tuition for private school. However, similar issues are presented by cases dealing with payments to attorneys for services not yet earned and other prepaid items for services or goods not yet provided, and in those cases, courts have consistently concluded that payments made prior to filing bankruptcy for services to be provided after filing bankruptcy are indeed property of the estate. The case of *In re Hines*, 147 F.3d 1185 (9th Cir. 1998)[6] is particularly illustrative of this point, and sets forth the applicable law as follows:

> As a legal matter that prepaid right to future legal services-because it exists at the outset of the bankruptcy case-becomes property of the debtor's estate, for subject to a few enumerated exceptions (none of which applies here) Section 541(a) provides that estate property includes "all legal or equitable interests of the debtor" in property, wherever located and by whomever held, as of the time the bankruptcy petition is filed. That statutory language reflects Congress' intent to define estate property in the broadest possible sense (see *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-05, 103 S. Ct. 2309 (1983)). ***Accordingly the right to legal services constitutes property of the debtor's estate, which under the literal language of the Code ought to be liquidated to satisfy creditors' claims against the estate.***

147 F.3d 1185, 1189 (emphasis added). *See also In re Dennison*, 84 B.R. 846 (Bankr. S.D. Fla. 1988) (court concluded that although the property is exempt, prepaid insurance premiums paid prior to the bankruptcy filing on a policy in effect at the time of the filing were property of the estate); *In re Orangebrook Concessions, Inc.*, 47 B.R. 858 (Bankr. S.D. Fla. 1985) (court concluded that prepaid rent paid prior to the bankruptcy filing was property

---

tuition more than six months (or even one month) prior to the beginning of the school year.

[6]*Hines* has been widely criticized on other grounds, specifically with respect to its holding that attorney fees for post-petition work under a prepetition fixed fee contract are not discharged. *See e.g., Bethea v. Robert J. Adams & Assoc.*, 352 F.3d 1125 (7th Cir. 2003).

of the estate); *LTV Steel Co., Inc. v. David Graham Co. (In re Chateaugay Corp.)*, 78 B.R. 713 (S.D.N.Y. 1987) (court concluded that prepaid freight charges paid prior to the bankruptcy filing were property of the estate); *In re Law,* 336 B.R. 780 (B.A.P. 8th Cir. 2006) (federal and state income tax refunds that Chapter 7 debtors received postpetition, including those portions of refunds that were attributable to debtors' federal child tax credit, were included in "property of the estate," as contingent interests in future payments which debtors possessed when they filed bankruptcy).

Despite this case law, the Debtors' contention is that the payments were not property of the estate because the Debtors were not in possession of the money, and therefore had no control over the money (having voluntarily prepaid it to the schools in question). However, the evidence conclusively established that they could have gotten a refund "no questions asked" at any time before August, which was two months into their bankruptcy. Accordingly, the Debtors did have control of the property and could have requested a refund, and proceeded to send their children to private school using post-petition funds, or moved their children to public school.[7] Accordingly, the payments at issue are clearly property of

---

[7]Debtors assert that the Trustee should not be able to control purely personal decisions of the Debtors, such as where they send their children to school, and cites *In re Thompson,* 253 B.R. 823 (Bankr. N.D. Ohio 2000), and *In re Hunt*, 153 B.R. 445, 453 (Bankr. N.D. Tex. 1992), for that proposition. The Court finds these cases inapposite as *Thompson* dealt with forcing a debtor to move out of her home in order to obtain a refund, and *Hunt* concerned whether a trustee could waive an individual debtor's attorney-client privilege.  There is no evidence before the Court that the Trustee seeks to interfere with the Debtors' personal decisions; the Debtors provided no evidence they would have been forced to send their children to public school had they simply not prepaid the next year's tuition and used post-petition earnings to pay for their children's private school education.

8

these Debtors' bankruptcy estate, and the only questions that remain are whether the Trustee's delay in bringing this action somehow absolves Debtors from their obligation to reimburse the Trustee for this asset, and if the Trustee's delay was not unreasonable, what is the proper remedy?

### B. *The Timing of the Trustee's Complaint and Motion to Compel*

Debtors contend that the Trustee should have acted sooner, and therefore, "the Trustee's claims are barred by applicable principles of waiver, estoppel, and laches." (Debtor's Post-Trial Brief, p. 9-11). In support of this contention, Debtors describe the applicable law as follows:

> Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he should forever be deprived of its benefits. It may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention to rely upon it. *Sirmon v. Roberts*, 209 Ark. 586, 191 S.W.2d 824 (1946).
>
> A party claiming estoppel must prove that he relied in good faith on some act or failure to act by the other party, and that, in reliance on that act, changed his position to his detriment. *Anadarko Petroleum Co. v. Venable*, 312 Ark. 330, 850 S.W.2d 302 (1993).
>
> Laches, which is a species of estoppel, rests upon the principle that, if one maintains silence when in conscience he ought to speak, equity will bar him from speaking when in conscience he ought to remain silent. *Page v. Woodson*, 211 Ark. 289, 200 S.W.2d 768 (1947). Laches, in a general sense, is the neglect, for an unreasonable and unexplained length of time, under circumstances permitting diligence, to do what in law should have been done, and more specifically it is inexcusable delay in asserting a right during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay. *Grimes v. Carroll*, 217 Ark. 210, 229 S.W.2d 668 (1950). The doctrine of laches is ordinarily applied to situations in which

>complainant has stood idly by while the other party has materially changed his position. *Richards v. Ferguson*, 252 Ark. 484, 479 S.W.2d 852 (1972).

The Court has reviewed these holdings, and find that they aptly describe the doctrines of waiver, estoppel, and laches under Arkansas law. However, Arkansas law also emphasizes that unreasonable delay in taking action must depend on the particularity of the facts of the case at hand. *See Page v. Woodson*, 211 Ark. at 293-294 ("No certain or definite period of time is necessary to establish laches. Each case must depend on its own peculiar facts."). The particular circumstances of this case include, first and foremost, that a bankruptcy trustee is administrating a bankruptcy estate. Accordingly, the Court first looks to the Bankruptcy Code and Rules (and to applicable bankruptcy case law) to determine whether the Trustee acted as expeditiously as he reasonably could under the circumstances of this case.

Section 704(1) [renumbered 704(a)(1) by BAPCPA] directs a Chapter 7 trustee to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest." However, the Debtor also has a duty to turn over estate property pursuant to 11 U.S.C. § 521(4) [renumbered 521(a)(4) by BAPCPA]. Further, 11 U.S.C. § 542 provides, in part, " . . . an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell or lease . . . shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

> This section, thus, lays down a general rule that "any property of a debtor's estate held by any entity must be turned over to the trustee...." *In re NWFX, Inc.,* 864 F.2d 593, 596 (8th Cir.1989). **The obligation to do so is "self-operative and mandatory."** *Matter of Larimer,* 27 B.R. 514, 516 (Bankr. D. Idaho 1983). "There is no requirement in the Code that the trustee make demand, obtain a court order, or take any further action in order to obtain a turnover of the estate's property." *Id.; see also, In re Bidlofsky,* 57 B.R. 883, 900 (Bankr.E.D.Mich.1985); *In re Lucas,* 100 B.R. 969, 973 (Bankr.M.D.Tenn.1989), *rev'd on other grounds,* 924 F.2d 597 (6th Cir.1991), *cert. denied, Forbes v. Holiday Corp. Savings and Retirement Plan,* 500 U.S. 959, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).

*In re U.S.A. Diversified Products, Inc.,* 193 B.R. 868, 872 (Bankr. N.D. Ind. 1995) (emphasis added). Accordingly, the Debtor has a duty to turn over estate property, and while the Trustee may file a complaint compelling the Debtor to do so, there are no strict deadlines in the Bankruptcy Code or Rules mandating when the Trustee must take such action.[8] The Trustee is however required to collect and administer estate property "as expeditiously as is compatible with the best interests of parties in interest" under § 704. The question in this case then becomes whether the Trustee's delay in bringing this action was incompatible with the best interests of the parties of interest, *i.e.,* the Debtors.[9]

In light of the particular facts of this case, the Court finds the Trustee's delay was not unreasonable or incompatible with the best interests of the Debtors. In fact, it was the

---

[8] Because the Code provides that turnover is a duty of the debtor and other parties holding estate property, compelling turnover is not specifically set forth as one of the Trustee's powers. The Code specifically provides for certain powers by the Trustee under 11 U.S.C. §§ 544, 545, 547, 548, and 549 and statutes of limitations apply to the actions taken under those provisions. *See generally* 11 U.S.C. § 546(a) and § 549(d).

[9] The unsecured creditors are the parties in interest who are represented by the Trustee; thus, when the Court analyzes the best interests of the parties in interest, it is considering that the Trustee represents the unsecured creditors' interest in trying to collect assets of the estate.

11

Debtors' actions that initially created the delay. The Debtors filed bankruptcy on June 3, 2005, but did not file their schedules until July 15, 2005. On those schedules, Debtors listed the payments to Christ the King and Catholic High on their Statement of Financial Affairs under "payments to creditors" but made no mention of what this payment was for. The Debtors' first meeting of creditors was held August 4, 2005, and second and third meetings were subsequently held. The Trustee did not know about the prepaid tuition until it was too late for the Debtors to request a "no questions asked" refund. Accordingly, the Trustee had to determine exactly what his claim was, and how to proceed to collect the monies – whether to proceed against the schools or against the Debtors. Supposing the Debtors had a cause of action against the schools for a refund, the Trustee would normally succeed to that cause of action and be the proper party to pursue it. However, in this case, the evidence established that the Debtors could have voluntarily requested a refund and worked out an alternate payment plan using post-petition funds. It was within the Debtors' control to do this.[10] The Trustee testified that at all times, he maintained he had some claim to these funds – the Debtors cannot claim he waited too long just because he did not seek reimbursement sooner, particularly given that the Trustee testified he initially expected the Debtors to negotiate a

---

[10]The Debtors' control as opposed to the Trustee's in this situation distinguishes this case from the situation presented in the *Pyatt* case which involved the Debtor's bank account and checks written pre-petition but cashed post-petition. A debtor's duties with respect to bank accounts (as opposed to other assets) are governed by § 521(1) and Bankruptcy Rules 1007(b)(1) and 4002(3), under which the Debtor is to provide the trustee with the information the trustee needs to obtain such funds from the bank, and thus, the Debtor is not required to withdraw funds out of his checking account and turn them over to the trustee. *See Brown v. Pyatt (In re Pyatt)*, 348 B.R. 783, 785 (B.A.P. 8th Cir. 2006).

12

purchase of this asset. The complexity of this bankruptcy case, as evidenced by the numerous 341(a) meetings and voluminous transcripts along with the very high level of docket activity in this case,[11] provide ample explanation for the Trustee's timing.

Debtors argue that the Trustee knew Debtors' children were attending private school during the 2005-2006 school year, and the Trustee should have sued the Debtors or the schools earlier so that the Debtors could make other arrangements for their children's education. Debtors argue that the "Trustee's delay in making his position known was intentional and unreasonable, both in terms of time and the circumstances, and the Debtors' detrimental change of position is manifest and indisputable." (Debtor's Post-Trial Brief, p. 11). The Court disagrees. The Debtors' own delays prevented the Trustee from taking action prior to the beginning of the school year, and once the school year had begun and proceeded, the question was really whether the Debtors would pay the Trustee back for something they should have turned over in the first place. The Debtors provided no evidence of detriment, and there was absolutely no indication in the testimony that these Debtors could not have afforded to send their children to private school with post-petition funds, or that they would have even considered public education.

Having found that the circumstances of this case adequately explain the Trustee's delay in bringing this action for all of the reasons explained herein, the Court further finds

---

[11]There are currently over 200 docket entries in the main bankruptcy case. Additionally, during the course of the bankruptcy case, two other adversary proceedings were filed by creditors (*Kennedy, et. al. v. Johnson*, 4:06-ap-1131, and *Arvest Bank v. Rice,* 4:06-ap-1102), both of which have since been closed.

13

that the doctrines of waiver, estoppel, and laches do not apply. The Trustee took no action indicating an intent to be deprived of his right to pursue these prepaid tuition payments, and therefore waiver does not apply. The Debtors have shown no evidence of reliance on the Trustee's delay in filing suit to show that they suffered a detriment. Accordingly, the Trustee is not estopped. Finally, the doctrine of laches, which as explained above, ordinarily applies "to situations in which [the] complainant has stood idly by while the other party has materially changed his position" does not apply to the facts of this case, as previously explained. The Trustee always maintained he had a claim on these payments, and has adequately explained that he took action to recover the funds once he realized the Debtors were not going to negotiate a repurchase of the asset. To the extent any equitable doctrine applies, it applies in favor of the Trustee – it is not equitable for the Debtors to voluntarily make tuition payments before they are due thereby moving money out of their estate, proceed to file bankruptcy but fail to adequately explain on their schedules what these payments were for, and then complain that the Trustee did not file suit earlier, while they and the Trustee are in the midst of a complex and litigious bankruptcy case. That said, while the Trustee is not barred by equitable considerations, the Trustee's delay may have created a practical problem in fashioning a remedy because it has now been over two years since the Debtors prepaid the tuition, the tuition has been earned, and the Debtors cannot now get a refund of that tuition.

### C.     *What is the Trustee's Remedy?*

The Court has found that the prepaid tuition at issue in this case was property of the Debtor's estate at the time they filed bankruptcy, and that the Trustee's timing in seeking

14

reimbursement for this asset was not unreasonable. The Trustee argues the proper remedy is a judgment against the Debtors for the prepaid tuition which was an estate asset the Debtors dissipated by not seeking a timely refund. The Trustee cites *Holder v. Bennett (In re Bennett)*, 126 B.R. 869 (Bankr. N.D. Tex. 1991), for the proposition that the trustee may be granted a judgment against the debtors for dissipated estate assets. The Court agrees, and finds that the Trustee shall be awarded judgment against the Debtors in the amount of $6,818.00 as prayed for in Trustee's Complaint.

In addition to the Trustee's Complaint which requested a judgment for reimbursement of this wasted estate asset, the Trustee also prayed for turnover of the prepaid tuition payments in his Amended Motion to Compel. The Court takes this opportunity to emphasize that it is not awarding turnover. Recently, the Eighth Circuit ruled in *In re Pyatt*, that "the use of a turnover remedy was inappropriate 'if, at the time it is instituted, the property and its proceeds have already been dissipated.'" 486 F.3d 423 (May 23, 2007) (citing *Maggio v. Zeitz (In re Luma Camera Service, Inc.*), 333 U.S. 56, 64 (1948). In *Pyatt*, the issue before the Court, on appeal from the Bankruptcy Appellate Panel, was whether the trustee could compel turnover by debtor of the balance that was in his checking account when he filed for bankruptcy, when those funds were subsequently dissipated by the cashing of checks debtor had written prepetition. The BAP's opinion was strictly limited to such scenario specifically citing Bankruptcy Rule 4002(3) and the Debtor's duty to report bank deposits. *In re Pyatt*, 348 B.R. 783, 785-786) (B.A.P. 8th Cir. 2006) ("A debtor is not required to physically collect that debt on the filing date, but must report the extent of that debt, *i.e.,* the balance in the

15

account, to the trustee."). *See also supra* note 8. The BAP also noted that in the case of checks written pre-petition, but cashed post-petition, the trustee was in a better position than the debtor to prevent those transfers because the debtor "runs the risk of being prosecuted for writing a bad check if he attempts to stop payment on an outstanding check on the eve of bankruptcy." *Id.* at 786. The BAP also stated that the trustee was in a better position to remedy the damage to the estate by avoiding such a transfer under 11 U.S.C. § 549. In affirming the BAP, the Eighth Circuit also found that the proper remedy was an action against the transferees under § 549. The Eighth Circuit noted that a trustee following Bankruptcy Rule 2015(a)(4) is required "'as soon as possible' after a bankruptcy filing to notify 'every entity known to be holding money or property subject to withdrawal or order of the debtor, including every bank, savings, or building and loan association,'" and thus, in the check writing scenario, the Trustee "would learn if an account balance reported by the debtor is inaccurate." 486 F.3d 423, 429-430.

Unlike *Pyatt*, this case does not concern a bank deposit account, or even a situation where the debtor scheduled a refund that the trustee might have known about and demanded from the payee. The Debtors in this case did not clearly list the prepaid tuition payments on their schedules as assets or on their statement of financial affairs as payments for the following year's tuition, and because their first meeting of creditors was not held until August 4, 2005, the deadlines for requesting a "no questions asked" refund of the prepaid tuition had passed when the Trustee learned of the tuition payments. Further, with the time that has passed since the payment was made, the services paid for have been provided by the

16

schools at issue, and it is doubtful whether the trustee has any remedy except to obtain a judgment against the Debtors. The Court finds that in this case, a judgment against the Debtors is an appropriate remedy under 11 U.S.C. § 105 to prevent an abuse of the bankruptcy process. Section 105(a) provides:

> The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

In *In re Mazon*, a case in which the Trustee was allowed to surcharge exempt assets of the debtors' estate because the debtors had willfully and fraudulently concealed and dissipated estate assets, the Florida bankruptcy court states as follows:

> The Bankruptcy Code does not explicitly provide for the remedy of surcharge against a debtor's exemptions. *Latman v. Burdette,* 366 F.3d 774, 785 (9th Cir. 2004). However, the "broad authority granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' " described in section 105 has been recently reaffirmed by the United States Supreme Court in the case of *Marrama v. Citizens Bank of Massachusetts,* --- U.S. ----, ----, 127 S.Ct. 1105, 1112, --- L.Ed.2d ----, ---- (U.S. 2007). Indeed, as noted by the Supreme Court in *Marrama,* "even if § 105(a) had not been enacted, the inherent power of every federal court to sanction 'abusive litigation practices,' [citation omitted] might well provide an adequate justification for a prompt" remedy when faced with a debtor's active misconduct to take advantage of the bankruptcy system for improper purposes as occurred in *Marrama* and as has occurred in this case. *Id.*

2007 WL 1437370, *2 (Bankr. M.D. Fla. 2007). The Eighth Circuit has noted that a bankruptcy court's powers under § 105(a) are not unlimited. "While the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, and while

17

such powers may encourage courts to be innovative, and even original, these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *In re Olson,* 120 F.3d 98, 102 (8th Cir. 1997).

In this case, granting the Trustee a judgment for the value of estate property which the Debtors dissipated is not inconsistent with any provision of the Bankruptcy Code. While the Eighth Circuit has held that turnover is not the appropriate remedy, it does not appear that any other remedy is more appropriate than having the Debtors reimburse the estate for the dissipation of an estate asset. Once school had started, which was when the Trustee learned of the prepaid tuition, the Trustee was put in the awkward position of suing the schools while the schools were already providing services to the Debtors' children.[12] If this Court were to deny the Trustee the relief he seeks, it would be sanctioning pre-petition payments for services to be rendered post-petition which would appropriately be paid for with post-petition funds. The Court would also be rewarding the Debtors for obfuscating this item on their schedules such that the Trustee could not take appropriate action sooner. The Court finds that in these circumstances, it would be an abuse of the bankruptcy process to allow the Debtors to prepay their children's tuition, fail to adequately disclose such prepayments on their schedules and statement of financial affairs, and then not reimburse the Trustee for those funds; therefore, judgment is awarded in favor of Plaintiff.

---

[12]The Court notes that it would be bad public policy to require a trustee to take action that would most likely embarrass debtors' children, either necessarily or unnecessarily, by needlessly involving the children's school(s).

## CONCLUSION

For the reasons explained herein, it is hereby

**ORDERED** that judgment is awarded in favor of Plaintiff, and the Court will enter a final judgment in accordance with this Memorandum Opinion; it is further

**ORDERED** that the portion of the Trustee's Amended Motion to Compel requesting attorney fees and costs shall be set for hearing by subsequent notice, and the remainder of such Amended Motion to Compel is **MOOT**; and it is further

**ORDERED** that the Defendants' Motion in Limine is **MOOT**.

 **IT IS SO ORDERED.**

*/s/ Audrey R. Evans*

HONORABLE AUDREY R. EVANS

EOD 7/19/2007
by B Greene

DATE: July 19, 2007


cc: Stephen P. Niswanger, attorney for Plaintiff(s)
David A. Grace, attorney for Defendant(s)
Trustee
U.S. Trustee